IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**JARRIN R. BALL,**

    **Plaintiff,**

**v.**                          **CASE NO. 2:06-cv-01068**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security[1],**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the court are the parties' cross-motions for judgment on the pleadings.

Plaintiff, Jarrin R. Ball (hereinafter referred to as "Claimant"), protectively filed applications for SSI and DIB on May

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

31, 2004, alleging disability as of February 27, 2004, due to "[m]ajor depressive disorder/panic disorder, agrophobia [sic], [and] hyperthyroidism." (Tr. at 76-78, 103, 297-99.) The claims were denied initially and upon reconsideration. (Tr. at 53-57, 62-65, 302-10.) On July 1, 2005, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 66.) The hearing was held on November 3, 2005, before the Honorable James P. Toschi. (Tr. at 31-50.) By decision dated December 30, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 18-25.) The ALJ's decision became the final decision of the Commissioner on November 9, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 6-9.) On December 27, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Docket # 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential

evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2005). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2005). The Commissioner must show two things: (1) that the claimant, considering claimant's age,

education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 19.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of depressive disorder and anxiety disorder. (Tr. at 24.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 24.) The ALJ then found that Claimant has a residual functional capacity to perform work at any exertional level, reduced by nonexertional limitations. (Tr. at 23.) As a result, Claimant can return to her past relevant work as a janitor. (Tr. at 24.) On this basis, benefits were denied. (Tr. at 25.)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less

> than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was thirty-three years old at the time of the administrative hearing. (Tr. at 34.) She graduated from high school, completed one year of college, and became licensed as a certified nursing assistant. (Tr. at 35-36, 108.) In the past, she worked as a correctional officer, a deli clerk, a janitor, a telemarketer, and a behavioral health technician. (Tr. at 89-95, 113.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as

necessary.

Claimant's physical impairments are not here in controversy. Consequently, the court limits its summary of the medical evidence to evidence pertaining to Claimant's mental impairments.

Claimant's history includes three hospitalizations at Highland Hospital ("Highland"). (Tr. at 134-39.) She was admitted to Highland on February 27, 2002, due to increased depression and because "when seen at the doctor's office [she] would not commit to safety." (Tr. at 138.) After being admitted, Claimant "stated she was never actively suicidal." Id. Highland's discharge notes show that Claimant had been "tapering her Effexor." (Tr. at 139.) She was discharged on March 1, 2002, with a diagnosis by Jaime Ortiz, M.D. of major depressive disorder,[2] severe, recurrent, without psychosis, stressors including pending divorce, and a Global Assessment of Functioning ("GAF") of 45.[3] (Tr. at 137-38.)

Claimant was admitted to Highland again on April 8, 2002. (Tr. at 136.) Dr. Ortiz noted that Claimant "wanted help with her relationship with her family," and "[b]y the time of discharge [on April 12, 2002], she was not suicidal." (Tr. at 136-37.) Claimant was discharged with a diagnosis by Dr. Ortiz of major depressive

---

[2] Major Depressive Disorder is characterized by one or more Major Depressive Episodes without a history of Manic, Mixed, or Hypomanic Episodes. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 339 (4th ed. 1994).

[3] A GAF of 41-50 is described as "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DSM-IV at 32.

disorder, severe, recurrent, without psychosis, personality disorder not otherwise specified ("nos")[4] with dependent traits, stressors related to relationship with the family, and a GAF of 40.[5] (Tr. at 136.)

Claimant's last admission to Highland occurred on April 23, 2002, "after her mother apparently told her to leave the house." (Tr. at 134.) Dr. Ortiz diagnosed major depressive disorder, severe, recurrent, without psychosis, borderline and dependent personality traits, stressors including poor relationship with family and recently unemployed, and GAF of 45. (Tr. at 134.) By the time of her discharge on April 25, 2002, Claimant was "calm, pleasant, well-kempt [sic], with improved mood" and "denied any thoughts of suicide." (Tr. at 134-35.)

From February 28, 2001 to February 27, 2002, Claimant received mental health treatment from Mark N. Casdorph, DO. (Tr. at 165.) He diagnosed Dysthymia[6] and prescribed Celexa, Ambian, and Klonopin. Id.

Records from Process Strategies show an initial evaluation of

---

[4] This diagnosis describes "disorders of personality functioning that do not meet criteria for any specific Personality Disorder." DSM-IV at 673.

[5] A GAF of 31-40 is indicative of "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (*e.g.*, depressed man avoids friends, neglects family, and is unable to work . . .). DSM-IV at 32.

[6] Dysthymic Disorder features "a chronically depressed mood that occurs for most of the day more days than not for at least 2 years." DSM-IV at 345.

7

Claimant conducted on May 11, 2004 (Tr. at 142-47). On June 29, 2004, Luann Munday diagnosed 296.32 major depressive disorder, recurrent, moderate and panic disorder[7] with agoraphobia,[8] personality disorder nos, and a GAF of 60.[9] (Tr. at 140.)

From August 30, 2004, to October 19, 2005, Claimant received mental health treatment from Ted Thornton, M.D., a psychiatrist at Highland Behavioral Health, Inc. (Tr. at 193-204, 241-52, 292.) Dr. Thornton repeatedly documented that Claimant's condition improved with medication. On January 12, 2005, he noted that Claimant's mood was euthymic and she was "doing better" with medications. (Tr. at 193-94.) As of that date, Dr. Thornton was prescribing Wellbutrin, Lexapro, Klonopin, and Abilify to Claimant. (Tr. at 193.) On October 19, 2005, Dr. Thornton wrote "[Patient] notes doing fairly well. . . . Still [with] two mild panic attacks per week. Mood fair . . . ." (Tr. at 292.) He diagnosed 296.62 bipolar I

---

[7] "The essential feature of Panic Disorder is the presence of recurrent, unexpected Panic Attacks ... followed by at least 1 month of persistent concern about having another Panic Attack, worry about the possible implications or consequences of the Panic Attacks, or a significant behavioral change related to the attacks." DSM-IV at 397.

[8] "The essential feature of Agoraphobia is anxiety about being in places or situations from which escape might be difficult (or embarrassing) or in which help may not be available in the event of having a Panic Attack ... or panic-like symptoms (e.g., fear of having a sudden attack of dizziness or a sudden attack of diarrhea) ...." DSM-IV at 396. "Panic Disorder with Agoraphobia is characterized by both recurrent unexpected Panic Attacks and Agoraphobia." DSM-IV at 393.

[9] A GAF of 51-60 suggests "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM-IV at 32.

disorder,[10] most recent episode mixed, moderate, panic disorder with agoraphobia, and post traumatic stress disorder. Id.

On November 4, 2004, Lisa C. Tate, M.A., licensed psychologist, and Kelly Robinson, M.A., supervised psychologist, conducted a psychological evaluation at the request of the State disability determination service ("DDS"). (Tr. at 166-71.) During the mental status examination, Claimant was alert and oriented; her mood was dysphoric; affect was mildly restricted; thought processes were logical and coherent; there was no indication of delusions, obsessive thoughts or compulsive behaviors; insight was fair; judgment was within normal limits; Claimant denied current suicidal ideation; and memory and concentration were within normal limits. (Tr. at 168-69.) The psychologists diagnosed 296.32 major depressive disorder, recurrent, moderate and 300.01 panic disorder without agoraphobia. (Tr. at 169.) Claimant's daily activities were found to include cooking food in the microwave, helping her daughter with homework, talking with her boyfriend on the telephone, reading mail, and watching television. (Tr. at 169-70.) Claimant reported weekly visits with her boyfriend in her home and monthly grocery shopping. (Tr. at 170.) Her social functioning, concentration, persistence, and pace all were within normal limits. (Tr. at 170.)

On December 7, 2004, H. Hoback Clark, M.D. completed a Mental

---

[10] See DSM-IV at 350-52.

Residual Functional Capacity Assessment and a Psychiatric Review Technique form at the request of DDS. (Tr. at 172-89.) Dr. Clark found no significant limitations in Claimant's understanding, memory, and adaptation, two areas of moderate limitation in her sustained concentration and persistence, and just one area of moderate limitation in her social interaction. (Tr. at 172-73.) She opined that Claimant's self-reports of functional limitations were "not entirely credible" and concluded that she "could perform work-like activities." (Tr. at 174.) Additionally, Dr. Clark evaluated Claimant under 12.04 affective disorders and 12.06 anxiety-related disorders. (Tr. at 176-89.) She found mild restriction of activities of daily living, moderate limitations in social functioning and concentration, persistence, and pace, and no episodes of decompensation. (Tr. at 186.) Dr. Clark opined that "[p]er [the] B criteria" Claimant's impairments did "not meet or equal the listings." (Tr. at 188.)

On April 28, 2005, Rosemary L. Smith, Psy. D., completed a Psychiatric Review Technique form at the request of DDS. (Tr. at 213-26.) Dr. Smith's medical disposition was based upon 12.04 affective disorders and 12.06 anxiety-related disorders. (Tr. at 213.) She determined that Claimant's impairments were not severe and found only mild functional limitations in activities of daily living, social functioning, concentration, persistence, and pace, and no episodes of decompensation. (Tr. at 213, 223.)

On August 26, 2005, Sheila Emerson Kelly, M.A., licensed psychologist, conducted a psychological evaluation and completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) at the request of Claimant's attorney. (Tr. at 227-40.) Ms. Kelly diagnosed depressive disorder nos and borderline personality disorder[11]. (Tr. at 235.) She rated Claimant's abilities in many work-related categories as "good" and "fair," but selected the "poor" rating for the areas of maintaining attention and concentration for extended periods, completing a normal workday or workweek, performing at a consistence pace, and accepting instructions and responding appropriately to criticism from supervisors. (Tr. at 237-38.) Ms. Kelly provided no medical clinical findings or other support for her assessment. Id.

On October 24, 2005, Dr. Thornton completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) at the request of Claimant's attorney.(Tr. at 293-96.) He rated Claimant's abilities as predominantly "good" and "fair." (Tr. at 193-94.) He found Claimant's abilities to be "poor" only in the areas of understanding, remembering, and carrying out detailed instructions. (Tr. at 193.) Dr. Thornton opined that Claimant "suffers from Bipolar Affective Disorder and panic attacks that effects [sic] her ability to perform consistently." (Tr. at 294.)

---

[11] Borderline Personality Disorder features "a pervasive pattern of instability of interpersonal relationships, self-image, and affects, and marked impulsivity that begins by early childhood and is present in a variety of contexts." DSM-IV at 650.

On August 28, 2006, Dr. Thornton again completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) at the request of Claimant's attorney.[12] (Tr. at 316-18.) This time, he rated Claimant's abilities in many areas to be "poor" and opined that Claimant "suffers from mood instability which precludes her from consistent effort/ability in the work place." (Tr. at 316-17.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in finding that Claimant's mental impairments neither met nor equaled any mental disorder in listings 12.04 (affective disorders) and 12.06 (anxiety disorders); (2) the ALJ erred in his assessment of residual functional capacity; and (3) the ALJ erred in finding Claimant capable of performing her past relevant work as a janitor. (Pl.'s Br. at 6-25.)

The Commissioner counters that substantial evidence supports the ALJ's finding that Claimant could perform her past relevant work as a janitor. (Def.'s Br. at 9-12.)

Discussion

A. Evaluating Severe Mental Impairments

When evaluating a claimant's mental impairments, the Social Security Administration uses a special sequential analysis outlined

---

[12] This document was submitted by Claimant's attorney to the Appeals Council and made a part of the record. (Tr. at 10, 315.)

at 20 C.F.R. §§ 404.1520a and 416.920a. First, symptoms, signs, and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1)(2005). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his/her decision the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e)(2005). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2)(2005). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3) (2005). The first three areas are rated on a five-point scale: None, mild, moderate, marked, and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4)(2005). A rating of "none" or "mild" in the first three areas, and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1)(2005). Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1.

§§ 404.1520a(d)(2) and 416.920a(d)(2)(2005). Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity.  §§ 404.1520a(d)(3) and 416.920a(d)(3)(2005).  The ALJ incorporates the findings derived from the analysis in the ALJ's decision:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2)(2005).

In this case, the ALJ's decision contains the significant mental health history, including examination findings, and the functional limitations which the ALJ considered in evaluating the severity of Claimant's mental impairments. (Tr. at 19-21.) The ALJ thoroughly evaluated Claimant's depression and anxiety as follows:

> The claimant's depression has been evaluated under Listing 12.04 for affective disorders. . . . Although the claimant may have some "A" criteria, she does not have the "B" or "C" criteria of listing level severity. . . . The claimant has a mild restriction in activities of daily living. She is the primary care provider for her eight-year old daughter. The claimant prepares simple meals, cleans, pays bills and does grocery shopping. She has a moderate limitation in maintaining social functioning. She has a history of conflict with supervisors and a history of conflict with her former husband and former boyfriends. She prefers to socially isolate. However, she has interacted appropriately at the District Office and at the consultative evaluations. Her own psychiatrist stated that she interacted well as previously discussed in Exhibits 10F and 12F. The

> claimant has a moderate limitation in maintaining concentration, persistence or pace. In a mental residual functional capacity assessment dated December 7, 2004, the State Agency consultant rated the claimant as moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Exhibit 7F). There have been no episodes of decompensation . . . . The evidence does not document the presence [of] the "C" criteria. The claimant's anxiety disorder has been evaluated under Listing 12.06. The claimant may have some "A" criteria but again, she does not have "B" criteria of listing level severity as previously discussed. Additionally, she does not have the "C" criteria as the claimant is able to function independently outside the area of her home.

(Tr. at 20-21.) Based on these findings, the ALJ concluded that Claimant's mental impairments neither met nor equaled in severity any mental disorder listed in Appendix 1. The ALJ clearly complied with the applicable regulations by articulating the medical history and functional limitation findings which support his severity determination. Therefore, the court proposes that the presiding District Judge find that substantial evidence supports the ALJ's finding that Claimant's mental impairments neither met nor equaled in severity any mental disorder in listings 12.04 (affective disorders) and 12.06 (anxiety disorders).

B. <u>Residual Functional Capacity</u>

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity (RFC) for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions."

See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a) and 416.945(a) (2005). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2005).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

Here, the ALJ considered the entire record, including the

16

treatment records and medical source statement from Dr. Thornton, the report and medical source statement of Psychologist Sheila Kelly, and Claimant's own statements of what she is able and unable to do. (Tr. at 21-23.) He found that she can perform simple work, with limited contact with the public or co-workers. (Tr. at 23-24.) It appears to the court that the ALJ's RFC finding reflects an adequate consideration of the functional limitations established in the record. Thus, the court proposes that the presiding District Judge find that the ALJ's RFC assessment is supported by substantial evidence.

C.  <u>Ability to Perform Past Relevant Work</u>

Social Security Ruling ("SSR") 82-61 clarifies the policy of the Social Security Administration "in determining whether a claimant can perform his or her past relevant work." 1982 WL 31387 at *1. SSR 82-61 provides, in pertinent part:

> Under sections 404.1520(e) and 416.920(e) of the regulations, a claimant will be found to be "not disabled" when it is determined that he or she retains the RFC to perform: 1. The actual functional demands and job duties of a particular past relevant job; or 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

1982 WL 31387 at *2.

In this case, the vocational expert ("VE") testified at the administrative hearing that Claimant's past relevant work as a janitor was at the light to medium exertional level and unskilled. (Tr. at 45, 47.) In his hypothetical question, the ALJ asked the

17

VE whether a person like Claimant would be able to perform any of her past relevant jobs with these limitations: understanding, remembering, and carrying out simple instructions and tasks only, and having no contact with the public or coworkers.  (Tr. at 46.) The VE responded that such a person could perform janitorial work. <u>Id.</u>  Based on this evidence, the ALJ found that "the [C]laimant can return to her past relevant work [as a janitor]." (Tr. at 24.) Thus, substantial evidence supports the ALJ's finding that Claimant is capable of performing her past relevant work as a janitor, and the undersigned magistrate judge proposes that the presiding District Judge so find.

<u>Conclusion</u>

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge DENY Plaintiff's Motion for Judgment on the Pleadings, GRANT Defendant's Motion for Judgment on the Pleadings, AFFIRM the final decision of the Commissioner, and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this

Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Chief Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

<u>February 4, 2008</u>
      Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge

19